UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **EUGENE SCALIA,** Secretary of Labor, United States Department of Labor, | ) ) ) |
| Plaintiff, | ) ) ) Case No.: 1:20-cv-674 |
| v. | ) ) |
| **THE FARMERS NATIONAL BANK OF DANVILLE and WEDDLE BROS. CONSTRUCTION CO. INC. EMPLOYEE STOCK OWNERSHIP PLAN TRUST,** | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of Labor ("Secretary"), alleges:

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and is brought by the Secretary under ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132 (a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and to obtain other appropriate relief to redress violations and enforce the provisions of that Title.

2. The ERISA violations alleged herein arise from The Farmers National Bank of Danville ("FNB" or "Defendant") causing the Weddle Bros. Construction Co. Inc. Employee Stock Ownership Plan ("ESOP") to purchase 100 percent of the outstanding stock of Weddle Bros. Construction Co. Inc. ("Weddle" or "Company") for $11.1 million, from persons and

entities who were parties in interest to the Plan ("ESOP Transaction"). As alleged more fully below, on March 1, 2013, FNB on behalf of the ESOP purchased 100 percent of Weddle stock for more than fair market value. As a result, the ESOP suffered losses.

## Jurisdiction and Venue

3. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(l).

4. Venue of this action lies in the Southern District of Indiana, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ESOP was administered and the breaches alleged herein took place in Bloomington, Monroe County, Indiana, within this district.

## Defendants

5. The ESOP is an ERISA plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2). The ESOP is named as a Defendant in this Complaint solely for the purpose of ensuring complete relief among the parties under Fed. R. Civ. P. 19.

6. From February 18, 2013 through March 1, 2013, FNB was the named Trustee of the ESOP and exercised discretionary authority and control over the management and disposition of the ESOP's assets.

7. FNB is a fiduciary of the ESOP under ERISA § 3(21)(A) because it had the discretionary authority over the ESOP's assets and investments as the named trustee of the ESOP and exercised discretionary authority and control over the ESOP when it made the decision, on behalf of the ESOP, to engage in the purchase of the Company stock. 29 U.S.C. § 1002(21)(A).

## Parties in Interest

8. The ESOP is sponsored by Weddle, an Indiana corporation performing as a general construction contractor in the business of the construction of roads, highways, utilities,

and residential, commercial, and industrial buildings. Weddle is headquartered in Bloomington, Indiana, where the ESOP is also administered.

9.Since 2011, Weddle was the Plan Administrator of the ESOP, and Weddle's employees participated in the ESOP. Therefore, Weddle was a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) during the relevant period. Weddle was also a party in interest pursuant to ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

10.Prior to March 1, 2013, Lee E. Carmichael ("Carmichael") was the President and CEO of Weddle and was a 42.63 percent shareholder of Weddle, and therefore was a party in interest to the ESOP pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

11.Prior to March 1, 2013, Scott A. Sieboldt ("Sieboldt") was Vice President of Weddle and was a 42.63 percent shareholder of Weddle, and therefore was a party in interest to the ESOP pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

12.Prior to March 1, 2013, Michael A. Hemmerling ("Hemmerling") was Vice President of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

13.Prior to March 1, 2013, Steven T. Hunt ("Hunt") was the Chief Financial Officer of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

14.Prior to Prior to March 1, 2013, Kelly G. Abel ("Abel") was an employee of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D).

15. Prior to March 1, 2013, William J. Ludow ("Ludow") was an employee of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D).

16. Prior to March 1, 2013, Marion S. Mishler ("Mishler") was an employee of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D).

17. Prior to March 1, 2013, Edward C. Zurface ("Zurface") was an employee of Weddle, and therefore, was a party in interest to the ESOP pursuant to ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D).

### Establishing the ESOP

18. In 2012, Carmichael engaged BKD, LLC to help establish the ESOP.

19. The ESOP was adopted by Weddle in December 2011, with an effective date of January 1, 2012. The document establishing the ESOP was signed by Carmichael, on behalf of Weddle.

20. Without conducting any due diligence to find the best Trustee for the ESOP, on November 30, 2012, Cara Benningfield, Senior Manager at BKD, LLC notified Carmichael that Rick Cash ("Cash") at PBI Bank, Inc. would act as the ESOP's Trustee. On December 3, 2012, BKD, LLC sent Carmichael the PBI Bank, Inc. engagement letter; PBI Bank, Inc. was retained as the ESOP's Trustee on that same day.

21. Subsequently, Cash left PBI, Bank, Inc. and went to work for FNB.

22. On February 14, 2013, PBI Bank, Inc. resigned as the ESOP's trustee and without conducting any due diligence to find a new trustee, FNB was retained as the ESOP trustee on February 18, 2013.

**David York's Valuation Analysis and Fairness Opinion**

23.     Without conducting any due diligence to find an appropriate appraiser to value Weddle on behalf of the ESOP, on December 3, 2012, Weddle and PBI Bank, Inc. agreed to retain David York & Associates ("York") as the appraiser for the ESOP, at the suggestion of BKD, LLC.

24.     Subsequently, after FNB replaced PBI Bank, Inc. as the ESOP's Trustee, Cash, now of FNB, recommended FNB engage York as the appraiser.

25.     FNB did not consider any other appraisers for the ESOP except for York.

26.     FNB did not investigate York's qualifications to act as the ESOP appraiser, including whether York had experience in appraising companies in the construction industry and companies in the Indiana geographic region.

27.     On February 21, 2013, the first draft valuation report prepared by York stated the Weddle's value at $8,190,000. On February 24, 2013, after a conference call with Carmichael, York, Cash, and representatives of BKD, LLC, York prepared a second draft report valuing the Company at $15,200,000. York prepared subsequent draft reports, eventually coming to the conclusion that the value of Weddle stock was $15,088,000.

28.     Among other reasons, York's opinion as to the value of the stock purchased by the ESOP was flawed because:

   (a)     York's valuation used an unsubstantiated negative company specific risk adjustment despite evidence that Weddle's financial ratios were all lower than the midpoint for the industry;

(b)     York's valuation used an inflated 5.3 percent long term growth rate in the calculation of the discounted future earnings and discounted cash flow methods, despite stating that Weddle's long term growth rate was 2.7 percent;

(c)     York's selection of valuation methodologies and weighting of these methodologies were unsubstantiated and designed to inflate the value of the Company stock; and

(d)     York's valuation used an unsubstantiated goodwill addition to inflate the value of the Company's tangible assets in the goodwill/revenue method.

29.     FNB as the ESOP's Trustee did not challenge the flaws in York's methodology detailed in Paragraph 24 above.

### The ESOP's Purchase of Weddle Stock

30.     On March 1, 2013, FNB consented to the ESOP purchasing 800,000 shares of Weddle stock, constituting 100 percent of the outstanding shares of Company stock, for $11,100,000, after a distribution of $3,500,000 to Carmichael, Sieboldt, Hemmerling, Hunt, Abel, Ludlow, Mishler, and Zurface (collectively, "Selling Shareholders") from the Company's Accumulated Adjustment Account and a distribution of $335,960 for pre-transaction acquisitions.

31.     York opined that in view of the $3,500,000 distribution of the Company's accumulated adjustment account to the Selling Shareholders, the purchase price of $11,100,000 was not more than adequate consideration, based on his valuation of the Company stock at $15,088,000.

32.     To effectuate the ESOP purchase of Weddle stock on March 1, 2013, Weddle and the Selling Shareholders entered into a Stock Purchase Agreement wherein Weddle assumed the

ESOP's promise to pay the Selling Shareholders $11,100,000. Also on March 1, 2013, FNB executed a promissory note on behalf of the ESOP agreeing to pay Weddle $11,100,000 ("ESOP Note"). The ESOP Note required a 2.52 percent interest rate with 15 annual payments maturing on December 31, 2027.

### FNB's Reliance on York's Opinion

33. In connection with the ESOP Transaction, FNB had a duty to determine whether the ESOP should purchase Weddle's shares, and if so, to cause the ESOP to pay no more than fair market value for Weddle's shares. To this end, FNB was obligated to read York's valuation report, understand the report, and to identify, question, and test its underlying assumptions. FNB failed to comply with these duties under ERISA and, as described below, caused the ESOP to overpay for the stock purchased in the ESOP Transaction.

34. FNB's reliance on York's opinion was unreasonable considering the fundamental flaws identified above in paragraph 24, and FNB knew or should have known that reliance on York's opinion was not justifiable. By relying on York's valuation, despite these readily-apparent flaws that FNB knew or should have known about, FNB failed to prudently and loyally represent the interests of the ESOP and its participants and beneficiaries, and caused the ESOP to pay above fair market value for Weddle stock.

### COUNT I
### (Prohibited transaction in violation of
### ERISA § 406(a)(1)(A) and (D))

35. Paragraphs 1-34 above are hereby re-alleged and incorporated herein.

36. FNB caused the ESOP to acquire stock in the ESOP Transaction by purchasing the shares from Selling Shareholders Carmichael, Sieboldt, Hemmerling, and Hunt.

37. The ESOP's acquisition of stock from parties in interest violated ERISA § 406(a)(l)(A) and (D), 29 U.S.C. § 1106(a)(l)(A) and (D), which prohibit a fiduciary from causing a plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest; or transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. By approving the ESOP Transaction on behalf of the ESOP, FNB caused the ESOP to engage in a prohibited transaction.

38. As a result of the prohibited transaction described above, FNB caused the ESOP to suffer financial losses for which FNB is personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

## COUNT II
**(Disloyalty and imprudence in violation of
ERISA § 404(a)(1)(A) and (B)**

39. Paragraphs 1-34 above are hereby re-alleged and incorporated herein.

40. In connection with the ESOP Transaction, FNB breached its fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), by, among other things: (a) failing to carry out a meaningful review of York's valuation; (b) failing to understand and question York's findings, assumptions or methodologies; (c) failing to independently determine that the ESOP was paying not more than fair market value for the stock; and (d) approving the ESOP's purchase of stock despite the fact

that it knew or should have known that the valuation upon which it was based was inflated and flawed.

41.     As a result of the foregoing imprudent and disloyal acts and omissions, FNB caused losses to the ESOP for which it is personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

## **Prayer for Relief**

WHEREFORE, the Secretary prays for judgment:

A.      Requiring FNB to restore all losses caused to the ESOP as a result of its fiduciary breaches;

B.      Requiring FNB to take such further and other action as necessary to fully undo the transactions prohibited by ERISA § 406, 29 U.S.C. § 1106;

C.      Requiring FNB to disgorge all fees and costs, including legal fees that it or its agents received from Weddle, the ESOP, or any other source for all services related to the ESOP and any litigation related to its fiduciary breaches alleged herein; and

    D.    Granting such other relief as may be equitable, just and proper.

Respectfully submitted,

**KATE S. O'SCANNLAIN**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

s/ Jing Acosta
**JING ACOSTA**
Trial Attorney

Attorneys for **EUGENE SCALIA**, Secretary of Labor, United States Department of Labor, Plaintiff

Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn Street, Room 844
Chicago, Illinois  60604
Telephone: (312) 353-1145
Facsimile: (312) 353-5698
Email: acosta.jing@dol.gov